IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ROBERT K. HILL, DONALD BLYTHER,
SANDY BLYTHER, KEITH CLARK, SAMUEL
COPELAND, B.T. ERVE, PERCY EVANS, GEORGE
FLAKES, SCOTT GOOLSBY, SHEILA KELLY,
PAUL LEONARD, FRED SMITH, DEWAYNE TOLLIER,
ULYSSES WILEY, and WARFLOYD WINTERS,
Individually and on Behalf of Themselves, and
on Behalf of a Class of Persons Similarly Situated                    PLAINTIFFS

V.                                              CAUSE NO.: 3:14CV213-SA-SAA

HILL BROTHERS CONSTRUCTION COMPANY, INC.,
HBC BOARD OF DIRECTORS, KENNETH W. HILL,
KENNETH W. HILL, JR., GERALD C. HILL, JIMMY HILL,
JOHN F. HILL, JR., STERLING AKER, DANNY MCALISTER,
CLYDE R. ROBERTSON, DONALD BATES, JANE H. CHILDS,
BETH LOCKHART, MARK ROBERTSON, DOUG HORTON,
DAVID HORTON, THE HILL BROTHERS CONSTRUCTION
COMPANY, INC. EMPLOYEE STOCK OWNERSHIP AND 401(K)
PLAN AND TRUST PLAN ADMINISTRATIVE COMMITTEE,
and THE PEOPLES BANK                                                  DEFENDANTS

MEMORANDUM OPINION

Fifteen Plaintiffs, on behalf of themselves as well as a class of others similarly situated, bring suit against the above-named Defendants under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. In particular, Plaintiffs seek plan-wide relief for a class of current and former participants and beneficiaries of the Hill Brother Construction Company, Inc. Employee Stock Ownership and 401(k) Plan and Trust ("the ESOP"). Plaintiffs have filed a Third Amended Complaint, and Defendants Clyde R. Robertson and Kenneth W. Hill, Jr. (Kenny Hill) have filed motions to dismiss.[1] Defendants contend application of the United

---

[1] Several other Defendants seek joinder to those motions and replies. Gerald C. Hill, John F. Hill, Jr., Sterling Aker, Danny McAlister, Donald Bates, Jane Childs, Beth Lockhart, Mark Robertson, Doug Horton, David Horton, and the Hill Brothers Construction Company, Inc. Employee Stock Ownership Plan and 401(k) Plan and Trust Administrative Committee join Clyde Robertson's Partial Motion to Dismiss [98] as well as Kenneth W. Hill, Jr.'s

States Supreme Court's recent iteration of an "alternative action" pleading standard requires dismissal of Plaintiffs' duty of prudence claims.

*Factual and Procedural Background*

The Hill Brothers Construction Company (HBC) was incorporated by four individuals to perform road and bridge construction on federal, state, and local roads. While there is disagreement about the original four incorporators, for purposes of this motion, it is important only that Kenneth W. Hill, Sr., Gerald Hill, John F. Hill, Jr., and Clyde Robertson ended up with all the shares in HBC until the Hill Brothers Construction Company, Inc. Employee Stock Ownership Plan and 401(k) Plan and Trust was later established for other HBC employees. Under that Plan, employees who are at least twenty-one years of age with 1,000 or more hours worked were eligible to invest in Company Stock purchased from the four shareholders. At the time relevant here, the ESOP held at least 49% of all Company Stock, with promissory notes outstanding for the remaining 51%.

In October of 2012, the Plan participants received official written notice that the value of their retirement investment was approximately $19.8 million. HBC was valued by an outside evaluator at $16 million in early 2013. Within six months, however, HBC had ceased operations. On June 18, 2013, HBC employees were notified that their retirement savings amounted to zero.

Plaintiffs brought this class action on behalf of themselves and current and former Plan participants whose individual accounts held shares of HBC common stock from December 31, 2006 to present. Plaintiffs believe there to be approximately 787 potential class members. Plaintiffs' Third Amended Complaint charges three counts.

---

Motion to Dismiss for Failure to State a Claim [103]. Plaintiffs have objected to this joinder, but provided no reasonable basis why the ruling on either one of these motions would not apply equally to the proposed joiners. Accordingly, the findings in this opinion will apply equally to the moving party, as well as the joining defendants.

The first Count alleges a breach of fiduciary duties by all Defendants for failing to manage the Plan's assets prudently and loyally. Count I asserts that the Defendants were responsible for ensuring all investments in the Company's stock were prudent and consistent with the purpose of the Plan. Plaintiffs assert that Defendants breached the duties of loyalty and prudence by failing to provide complete and accurate information regarding the Company's true financial condition, which negligently fostered a positive attitude toward the Company's stock and allowed the Plan participants to "follow their natural bias towards investment in the equities of their employer" by not disclosing material facts regarding HBC's financial health. Therefore, Plaintiffs claim that Defendants are directly liable for losses resulting from imprudent investing.

Count II alleges a breach of the fiduciary duty to monitor other fiduciaries adequately and provide them with accurate information. This Count asserts that the Defendants are liable as co-fiduciaries and had a duty to monitor and review the actions of other fiduciaries. Pursuant to that cause of action, Plaintiffs allege that the monitoring fiduciaries had a duty and negligently failed to (a) prevent the Plan from continuing to offer company stock as an investment option; (b) disclose to the monitoring fiduciaries accurate information about the financial condition of the company that these Defendants needed to make informed decisions regarding Plan investment; (c) disclose to the monitored fiduciaries accurate information about the theft of corporate opportunity the other defendants were committing; and (d) adequately monitor the actions of the Directors and officers of the HBC in the conduct of their management of the ESOP Plan asset, i.e., the stock of HBC. Plaintiffs claim that as a direct result of these breaches, the entire retirement investment in the Plan was lost.

Plaintiffs allege as their final cause of action a breach of fiduciary duty by theft of corporate opportunity. Plaintiffs submit that Kenneth W. Hill, Sr., Kenny Hill, Gerald C. Hill,

and Clyde Robertson (referred to as the "Corporate Fiduciary Defendants"), as managers and directors of HBC had a duty not to keep HBC corporate opportunities for themselves but to share with the corporation. Count III outlines two ways these Corporate Fiduciary Defendants allegedly usurped HBC's corporate opportunity. First, the Complaint states that these four Defendants owned a leasing company, Hill Brother Leasing Company, which purchased construction equipment, then leased that equipment to HBC at an inflated rate. Plaintiffs state that the leasing company charged unfair rental rates and leased equipment to HBC that it did not need or use. Therefore, the corporate opportunity to own its own equipment and not pay rent on equipment was stripped from HBC by those Corporate Fiduciary Defendants in violation of their fiduciary duties of loyalty and obedience.

Second, according to Plaintiffs, the Corporate Fiduciary Defendants established and currently operate the company Xcavators, Inc., for the purpose of taking away construction job business opportunities for themselves. Plaintiffs claim that the operation of Xcavators, Inc., is funneling prospective HBC customers to Xcavators, Inc., and that the Corporate Fiduciary Defendants exploited the goodwill of HBC and actively used their positions at HBC for their personal benefit, instead of for the benefit of HBC. The Corporate Fiduciary Defendants allegedly misused confidential information, HBC facilities, offices, and equipment to carry out the theft of corporate opportunity. The breaches of fiduciary duties of loyalty and obedience resulted in the direct and proximate loss of the entire retirement investment in the Plan by its Participants, according to the Complaint.

Defendants Clyde Robertson and Kenny Hill contend that Plaintiffs have failed to state a claim in accordance with *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. ---, 134 S. Ct. 2459,

4

189 L. Ed. 2d 457 (2014), as to the duty of prudence counts. The Court reviews that standard here.

*ERISA and the Duty of Prudence*

Congress enacted ERISA as a statutory scheme "to protect employees' rights to benefits while also encouraging employers to develop employee benefits programs." *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003). ERISA requires every employee benefit plan to be established and maintained pursuant to a written instrument that provides "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). A person or entity becomes an ERISA fiduciary either by being named as a fiduciary in the written instruments governing the employee benefit plan, or by exercising discretionary authority or control over the management, administration, or assets of a plan. 29 U.S.C. §§ 1102(a), 1002(21)(A). ERISA fiduciaries assume several affirmative duties, including: (1) the duty to act solely in the interest of plan participants and beneficiaries, (2) the duty to exercise care, skill, prudence, and diligence, (3) the duty to diversify investments of the plan to minimize risk of loss unless it is imprudent to do so under the circumstances, and (4) the duty to act in accordance with the documents and instruments governing the plan unless to do so would violate ERISA. 29 U.S.C. § 1104(a)(1); *see also Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.,* 173 F.3d 313, 317 (5th Cir. 1999).

Here, Defendants challenge Plaintiffs' ability to state a claim for breach of the fiduciary duty of prudence. Under previously-controlling Fifth Circuit law, company stock was a presumptively prudent investment for benefit plans. *Kopp v. Klein*, 722 F.3d 327, 335-36 (5th Cir. 2013), *vacated,* 134 S. Ct. 2900, 189 L. Ed. 2d 853 (2014) (citing *Fifth Third*, 134 S. Ct.

2459, 189 L. Ed. 2d 457). To overcome this presumption—first developed by the Third Circuit in *Moench v. Robertson*—a plaintiff would have to "establish[ ] that the fiduciary abused its discretion by investing in employer securities." 62 F.3d 553, 571 (3d Cir. 1995). The Fifth Circuit, which adopted the *Moench* presumption in *Kirschbaum v. Reliant Energy,* has explained that the abuse of discretion standard is met only where a plaintiff alleges "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." 526 F.3d 243, 256 (5th Cir. 2008) ("The *Moench* presumption logically applies to any allegations of fiduciary duty breach for failure to divest an . . . ESOP of company stock"). In other words, to overcome the "presumption of prudence," a plaintiff would have to show that the fiduciary "could not have believed reasonably that continued adherence to the [plan's] direction was in keeping with the settlor's expectations of how a prudent fiduciary would operate." *Moench,* 62 F.3d at 571.

On July 25, 2014, the United States Supreme Court issued a unanimous opinion rejecting the "presumption of prudence" followed within this Circuit and others for ESOP fiduciaries, holding that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. ---, 134 S. Ct. 2459, 2467, 189 L. Ed. 2d 457 (2014). The Court noted that the *Moench* presumption of prudence "does not readily divide the plausible sheep from the meritless goats," a task which was better accomplished through "careful, context-sensitive scrutiny of a complaint's allegations." *Id.*, 189 L. Ed. 2d 457. "Because the circumstances of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." *Id.* at 2471, 189 L. Ed. 2d 457.

*Fifth Third* involved an ESOP that held the publicly-available stock of Fifth Third Bancorp. *Id.* at 2464, 189 L. Ed. 2d 457. The plaintiffs there, former employees of Fifth Third and participants in the ESOP, claimed that the defendants violated their duty of prudence by failing to shield plan participants from overvalued and risky Fifth Third stock despite publicly available information indicating that the subprime mortgage market, in which Fifth Third had a significant financial stake, was on the brink of collapse. *Id.*, 189 L. Ed. 2d 457.

In remanding the case to the Court of Appeals, the Supreme Court reiterated that the pleading standard from *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), was appropriate, but issued "considerations" to follow depending on whether the information alleged to have been imprudently ignored by the fiduciary was publicly available or known only through insider information. On the basis of information publicly-available, the Court held that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id.* at 2471, 189 L. Ed. 2d 457. Thus, the fiduciaries may "'rely on the security's market price as an unbiased assessment of the security's value in light of all public information.'" *Id.*, 189 L. Ed. 2d 457 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. ---, 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014)). "In other words, a fiduciary usually 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stock traded on it that is available to him.'" *Id.*, 189 L. Ed. 2d 457 (quoting *Summers v. State Street Bank & Trust Co.,* 453 F.3d 404, 408 (7th Cir. 2006)).

As to plaintiffs' allegations regarding non-public information available only to the fiduciaries because they were Fifth Third insiders, the Court held:

> [t]o state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

*Id.* at 2472, 189 L. Ed. 2d 457.

The Court further outlined three points to "inform the requisite analysis": (1) the duty of prudence does not require fiduciaries to violate securities laws; therefore, allegations requiring the sale of the ESOP's holdings, where doing so would constitute corporate insider trading, dismissal was appropriate; (2) allegations faulting fiduciaries for failing to decide, on the basis of insider information, to refrain from making additional stock purchases or for failing to disclose that information to the public so that the stock would no longer be overvalued require a court to consider the conflict between ERISA and complex insider trading and corporate disclosure requirements imposed by the federal securities laws; and (3) allegations faulting the fiduciary for not stopping stock purchases, which "the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment . . . would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Id* at 2473, 189 L. Ed. 2d 457.

Even more recently, the Supreme Court further opined that the concern of *Fifth Third*'s duty of prudence standard is on the "potential for conflict" that arises when fiduciaries are alleged to have imprudently failed to act on inside information they had about the value of the employer's stock, as was the issue in *Amgen Inc. v. Harris*, 577 U.S. ---, 136 S. Ct. 758, 759 (2016). The Court reversed and remanded the Ninth Circuit's reinstatement of the case and

commented that the Ninth Circuit "failed to assess whether the complaint in its current form 'has plausibly alleged' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" *Id.* at 760 (quoting *Fifth Third*, 134 S. Ct. at 2463, 189 L. Ed. 2d 457).

In the two pending motions pertinent here, Defendants urge the Court to dismiss Plaintiffs' breach of the fiduciary duty of prudence claims based on Plaintiffs' failure to plead an alternative action that the Defendants could have taken that would not have done more harm than good. According to Defendants, regardless of the type of business involved in the ESOP, the standard for the duty of prudence claims remains the same.

Plaintiffs argue that because the businesses in both *Fifth Third* and *Amgen* were publicly-traded corporations, the same considerations and standards do not apply here as HBC was a closely-held corporation. In particular, Plaintiffs contend that the claims in those cases were based on inside information that is not at issue here, and publicly traded corporations are subject to securities laws whereas non-public entities are not. Therefore, Plaintiffs assert there is no specific requirement to plead an "alternative action."

Neither Supreme Court case specified that the "alternative action" standard is to be applied to ESOPs of publicly-traded entities only. The context-specific inquiry engaged by the Supreme Court in both instances led to analyzing the elements and considerations unique to publicly-traded corporations. Those context-specific considerations are not necessary here.

The Supreme Court elucidated that a plaintiff must plausibly allege an alternative action that the fiduciary could have taken that would have been consistent with securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it in order to state a claim for breach of the duty of prudence based on inside

information. "Inside information," as it pertains to securities laws, has been defined by the United States Supreme Court as "material, nonpublic information." *Dirks v. SEC*, 463 U.S. 646, 648, 103 S. Ct. 3255, 77 L. Ed. 2d 911 (1983). In the more general sense, Black's Law Dictionary defines "inside information" as "[i]nformation about a company's financial or market situation obtained not from public disclosure, but from a source within the company or a source that owes the company a duty to keep the information confidential." 915 BLACK'S LAW DICTIONARY (10th ed. 2014). Although Plaintiffs never explicitly state what the information was or could be that the Defendants were purportedly aware, due to the closely-held nature of the corporation, information generated regarding the financial condition of such business would qualify as "inside information" pursuant to either definition.

Looking to the other considerations the Supreme Court set forth which "inform[ed] the requisite analysis" of the "alternative action" pleading standard, none of the situations outlined by the Court are relevant for closely held corporations; however, that does not necessarily preclude the application of the alternative action pleading standard to closely-held entities. First, as noted above, the Supreme Court explicitly stated that the duty of prudence does not require fiduciaries to violate securities laws, and that allegations constituting corporate insider trading would demand dismissal under ERISA. In this situation, the parties have not asserted that any securities laws are at issue, and indeed, insider trading is not an issue. Thus, there is no allegation of breach of a duty of prudence in the closely-held corporation situation in which securities laws are potentially violated which would require dismissal under ERISA.

Second, the Court stated that allegations faulting fiduciaries for failing to decide, on the basis of insider information, to refrain from making additional stock purchases or for failing to disclose that information to the public so that the stock would no longer be overvalued would

involve a balancing determination between ERISA and federal securities laws. Again, those issues are not present here. There is no allegation that the alleged fiduciaries could impact or did impact the price of stock in HBC.

Third, the Court specifically considered that allegations faulting the fiduciary for not stopping stock purchases, which "the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment . . . would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Id* at 2473, 189 L. Ed. 2d 457. The Hill Brothers Construction Company stock was not available on the public market and its stock was not publicly-traded. Therefore, the court is not required to inquire into the balance of securities laws and public markets. The specific issues identified by the Supreme Court as instructive in analyzing duty of prudence claims are not pertinent here; however, that does not mean the standard does not apply here. These considerations are not part of the "requisite analysis" for this particular claim.

Additionally, the Court finds informative the Supreme Court's reflection on the potential for conflict as indicative of the need for an alternative action to be pled. The Court in *Amgen* examined the "potential for conflict" that arises between the alleged fiduciaries and the value of the stock to note an alternative action must be pled to sustain a duty of prudence claim. Because here, the stock price was set by a neutral third party, and there are no allegations of fraud with respect to that valuation, there is no "potential for conflict" as the Defendants had no control over the third party appraiser's valuation of stock.

However, a potential for conflict did exist due to the alleged fiduciaries' role as directors and/or officers of HBC. As stated in *Moench*, courts should be cognizant that as the financial state of the company deteriorates, "ESOP fiduciaries who double as directors of the corporation

11

often begin to serve two masters." *Moench*, 62 F.3d at 572. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act. *Id.* Indeed, "'[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions.' " *Martin v. Feilen,* 965 F.2d 660, 670 (8th Cir. 1992) (citation omitted). As the *Feilen* court stated in the context of a closely held corporation:

> [T]his case graphically illustrates the risk of liability that ESOP fiduciaries bear when they act with dual loyalties without obtaining the impartial guidance of a disinterested outside advisor to the plan. Because the potential for disloyal self-dealing and the risk to the beneficiaries from undiversified investing are inherently great when insiders act for a closely held corporation's ESOP, courts should look closely at whether the fiduciaries investigated alternative actions and relied on outside advisors before implementing a challenged transaction.

*Id.* at 670–71.

The Court's reading of *Fifth Third* does not preclude application of the "alternative action" standard to this situation. Here, inside information is alleged to form the basis of the Plaintiffs' breach of the fiduciary duty of prudence. As noted above, no securities law infringements are at issue or need to be balanced. Therefore, in order to state a claim for breach of the fiduciary duty of prudence, the Plaintiffs must plausibly allege an alternative action that the Defendants could have taken consistent with securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than help it.

*Discussion and Analysis*

Using the language of the Complaint, the Court has concisely stated the Plaintiffs' allegations that Defendants breached their fiduciary duty of prudence as follows:

- "Defendants were responsible for ensuring that all investments in the Company's Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan." [91], p. 21.

- "At all times relevant to this Complaint the Plan provided a number of different options for investment of the Plan's assets, including the Fund." [91], p. 16.

- "Defendants also breached their duties of loyalty and prudence by negligently failing to provide complete and accurate information regarding the Company's true financial condition." [91], p. 22.

- Count I alleges that Defendants negligently breached their fiduciary duties "by failing to manage prudently and loyally the Plan's investment in HBC's securities, and by failing to provide complete and accurate information to Plan participants regarding the Company's financial condition and the prudence of investing in Company Stock." [91], p. 3 Aside from the financial condition of HBC, Plaintiffs allege that Defendants continued to offer stock as an option "when dissolution of HBC was imminent," [91], p. 3, and in light of "its credit costs and loan losses continually increas[ing] during the Class Period," [91], p. 4.

- Defendants had a duty and failed to "(1) prevent the Plan from continuing to offer Company Stock as an investment option; (2) failed to disclose to the monitored fiduciaries accurate information about the financial condition of the Company that these Defendants needed to make sufficiently informed decisions respecting Plan investments and to keep beneficiaries informed; (3) failed to disclose to the monitored fiduciaries accurate information about the theft of corporate opportunity in which these same Defendants were engaged; and (4) failed to adequately monitor the actions of the

13

directors and officers of HBC in the conduct of their management of the ESOP plan asset, i.e. the stock of HBC." [91], p. 23.

→ "Defendants are liable for losses incurred as a result of such investments being imprudent." [91], p. 21.

Plaintiffs have failed to allege an alternative action that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than help it. Even if the Court did not find the *Fifth Third* standard to be applicable here, Plaintiffs have failed to state a claim pursuant to *Iqbal* and *Twombly*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). As the Supreme Court has explained, this standard creates a "two-pronged approach" based on "[t]wo working principles." *Id.* at 678, 679, 129 S. Ct. 1937.

First, although a complaint need not include detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*, 129 S. Ct. 1937. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.*, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "While

legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. This "facial plausibility" prong requires the plaintiff to plead facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S. Ct. 1937. Importantly, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 129 S. Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense." *Id.*

A claim for breach of fiduciary duty under ERISA may survive a motion to dismiss – even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary – if the complaint "allege[s] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011) (internal quotation marks omitted). Under this objective standard, whether an ERISA fiduciary's investment decision is improvident depends on what a prudent man in like circumstances would do." *Knight v. C.I.R.*, 552 U.S. 181, 193, 128 S. Ct. 782, 169 L. Ed. 2d 652 (2008) (discussing the genesis of the prudent-man standard). Critically, however, plaintiffs "cannot rely, after the fact, on the magnitude of the decrease in the [relevant investment's] price." *In re Citigroup*, 662

F.3d at 140. Rather, if the complaint relies on circumstantial factual allegations to show a breach of fiduciary duties under ERISA, those allegations must give rise to a "*reasonable* inference" that the defendant committed the alleged misconduct, *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937 (emphasis added), thus "permit[ting] the court to infer more than the *mere possibility* of misconduct," *id.* at 679, 129 S. Ct. 1937 (emphasis added). The application of this "plausibility" standard to particular cases is "context-specific," *id.*, 129 S. Ct. 1937, and requires assessing the "allegations of the complaint as a whole," *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011)

In this, as in all cases, the test of prudence is one of conduct, not results. *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983). The focus of the inquiry is "how the fiduciary acted," not "whether his investments succeeded or failed." *Donovan,* 716 F.2d at 1467 (internal citation omitted). The prudence requirement is a flexible standard, and a fiduciary's conduct must be evaluated "in light of the character and aims of the particular type of plan he serves." *Id.* (internal quotation omitted); *Kirschbaum*, 526 F.3d at 253-54 (5th Cir. 2008). However, the liability provision of ERISA, 29 U.S.C. § 1109(a), makes a fiduciary liable for "losses . . . *resulting from* each such breach" of its fiduciary duty. *Id.* § 1109(a) (emphasis added). The phrase "resulting from" indicates that there must be a showing of "some causal link between the alleged breach . . . and the loss plaintiff seeks to recover." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1238-39 (10th Cir. 2002); *Silverman v. Mut. Benefit Life Ins. Co.,* 138 F.3d 98, 104 (2d Cir. 1998); *Whitfield v. Lindemann,* 853 F.2d 1298, 1304–05 (5th Cir. 1988); *Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982) (noting that the language of § 1109(a) "clearly indicates that a causal connection is required between the breach of fiduciary duty and the losses incurred").

16

Here, Plaintiffs have failed to plead any allegations of how the breach by the fiduciaries caused the loss to the Plan. Plaintiff has failed to show that the Plan suffered or the participants were harmed because of Defendants' alleged imprudence. Accordingly, Plaintiffs have failed to state a claim for breach of the duty of prudence.

<u>Hill's Motion to Dismiss</u>

Hill also seeks dismissal of Count III, stating that Plaintiffs failed to contemplate a legitimate business reason for a business relationship such as the one between HBC and Hill Brothers Leasing. Hill also contends in regard to Xcavators, Inc., that no business opportunity can be taken away from a defunct business. These arguments are more akin to defenses to claims than arguments about Plaintiffs' pleadings. These issues are more appropriately determined at a later stage of proceeding.

*Conclusion*

The Court finds that the Supreme Court's statement of the standard for duty of prudence claims is applicable to this case. Plaintiff has not pled an alternative action the fiduciaries could have taken that a prudent fiduciary in the same situation would not have viewed as more likely to harm the fund than to help it. Moreover, Plaintiffs failed to plead a causal connection between the alleged breach of the duty of prudence and the losses that occurred. Therefore, Plaintiffs have failed to state a claim for breach of the duty of prudence, and Counts I and II of Plaintiffs' Third Amended Complaint are dismissed. Plaintiffs' Count III survives at this stage of the proceedings.

Clyde R. Robertson's Partial Motion To Dismiss [98] is GRANTED, and Kenneth W. Hill, Jr.'s Motion to Dismiss [103] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this the 28th day of March, 2016.

              **/s/ Sharion Aycock**
              **U.S. DISTRICT JUDGE**