**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | | |
|---|---|---|
| **ROBERT K. HILL,** *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:14-cv-00213-SA-RP |
| | ) | |
| **HILL BROTHERS CONSTRUCTION** | ) | CLASS ACTION |
| **COMPANY, INC.,** *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM BRIEF OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF A CLASS ACTION SETTLEMENT AND CERTIFICATION OF
THE SETTLEMENT CLASS**

**COME NOW**, Plaintiffs Robert K. Hill, Donald Byther, Sandy Byther, Keith Clark, Samuel Copeland, B.T. Erve, Percy Evans, George Flakes, Scott Goolsby, Sheila Kelly, Paul Leonard, Fred Smith, Dewayne Toliver, Ulysses Wiley, and Warfloyd Winters (the "Plaintiffs") and respectfully submit the instant Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Memorandum"). If granted final approval, the settlement of the instant class action lawsuit will resolve the claims of the Plaintiffs and the putative class (collectively, the "Class"), and will bring this litigation to a conclusion.

## I.      INTRODUCTION

The Plaintiffs' request for final approval of the Settlement Agreement (the "Settlement") to fully and finally resolve this matter is unopposed by Defendants Hill Brothers Construction Company, Inc. ("HBC" or the "Company"), the HBC Board of Directors, Kenneth W. Hill, Kenneth Hill, Jr., Gerald C. Hill, Jimmy Hill, John F. Hill,, Jr., Sterling Aker, Danny McAllister, Clyde R. Robertson, Donald Bates, Jane H. Childs, Beth Lockhart, Mark Robertson, Doug

Horton, David Horton, and the Hill Brothers Construction Company Inc. Employee Stock Ownership and 401(K) Plan and Trust Plan Administrative Committee (collectively, the "Defendants").

The Settlement provides the following benefits to the Class:

A.     Eight Hundred and Fifty Thousand Dollars ($850,000.00) (the "Fund") to the Class, with the balance, after the distribution of payments as described in paragraphs B and C below, to be deposited into the Hill Brothers Construction Company Inc. Employee Stock Ownership and 401(K) Plan (the "Plan").

B.     The costs of notice to the Class totaled $1,927.81[1], and shall be distributed from the Fund.

C.     Attorneys' fees and costs of this litigation are to be paid from the Fund, subject to Court approval, in an amount not to exceed one-third of the value of the Settlement Amount.

D.     The remainder to the Fund will be deposited into the Plan, and subsequently distributed to the Class based upon the terms of the Plan.

This Settlement has a value of $850,000.00. Unlike other traditional class actions, here the Class will benefit from this Settlement as this is not a claims-made settlement. Members of the Settlement Class shall benefit immediately from the resolution of this matter, as the remaining portion of the Fund, after attorneys' fees, costs, expenses, and costs of notice shall be paid into the Plan. The share of the Fund, after attorneys' fees, costs, and expenses, to which a member of the Class is entitled will be based upon the records and terms of the Plan as of August 15, 2013.

The Settlement was negotiated at arms-length during mediation facilitated by the Honorable Larry Latham after more than two (2) years of aggressive litigation, extensive motion

---

[1] Counsel did not charge for the labor costs incurred in distributing notice but only for hard costs including mailing, postage, web hosting, email and domain services.

practice, limited formal and informal discovery, summary judgment adjudications, and countless informal discussions regarding resolution.

While Plaintiffs are confident of a favorable determination on the merits of their pending claims, they have determined that the proposed Settlement provides significant benefits to and is in the best interests of the Settlement Class in light of the uncertainty posed by this pending matter. The Plaintiffs respectfully submit that the Settlement is appropriate in light of the expense and time required to pursue this litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting claims like those asserted by Plaintiffs – especially in light of the limited discovery which has been conducted, issues regarding the location of documents seized by Liberty Mutual, and the dismissal of two (2) of the Plaintiffs' claims. Similarly, Defendants believe they have substantial and meritorious defenses to Plaintiffs' claims, but nonetheless have determined that it is desirable to settle the litigation according to the terms set forth in the Settlement.

Accordingly, the Plaintiffs, on behalf of the Class, request that this Honorable Court enter an order granting final approval of the proposed Settlement as fair, adequate and reasonable, and certifying the Settlement Class as final pursuant to Fed. R. Civ. P. 23(b)(3) for the purposes of settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This case was originally filed by Plaintiffs on September 29, 2014 for Plan-wide relief pursuant to Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a), on behalf of a class consisting of all current and former participants in the Plan. In Count I, the Plaintiffs alleged that Defendants negligently breached their fiduciary

duties to Plaintiffs by failing to manage prudently and loyally the Plan's investments in HBC's securities and by failing to provide complete and accurate records and information to Plan participants regarding the Company's financial condition and the prudence of investing in Company stock. In Count II, the Plaintiffs alleged that Defendants breached their fiduciary duties to Plaintiffs, the Plan, and the putative class, by failing to monitor adequately other persons to whom management/administration of Plan assets was delegated.

On July 15, 2015, the Plaintiffs filed their Third Amended Complaint, adding Count III, and alleging that Defendants breached their fiduciary duties to the Plaintiffs, the Plan, and the putative class, by theft of corporate opportunity - specifically with regard to the Defendants' relationships with Hill Brothers Leasing and Xcavators, Inc..

### B.     Proceedings to Date

The Plaintiffs filed the original Complaint in this case on September 29, 2014.  (Dkt. 1) Thereafter, the Plaintiffs filed their First Amended Complaint [Dkt 5], their Second Amended Complaint [Dkt 27] on February 16, 2015 and their Third Amended Complaint [Dkt 91] on July 17, 2015.

This case was originally filed by the Plaintiffs seeking class certification by the Court. The Court entered an Order [Dkt 61] setting forth the proposed case management order. The parties were ordered to initially engage in class-focused discovery only. Class focused discovery continued until the Plaintiffs' Class Certification Motion deadline, which ended October 16, 2015. Defendant Clyde Robertson and Defendant Kenny Hill, Jr. filed Motions to Dismiss [Dkt 98 and Dkt 103, respectively] on July 30, 2015 and July 31, 2015, respectively. The Plaintiffs filed their Motion for Class certification and corresponding brief on October 16, 2015 [Dkt 140].

On or about February 1, 2016, a status conference was held with Magistrate Judge Alexander. Subsequently an Order [Dkt 158] was entered governing substantive discovery. The Order provided "[t]he parties must make full pre-discovery disclosures and may begin full discovery on April 1, 2016, or the day after the court's ruling on the pending motions to dismiss, whichever occurs first." The Plaintiffs and Defendants propounded substantive discovery as required by the Order [Dkt 158]. Likewise, the parties responded to the written discovery requests submitted to each. The parties also agreed to deposition dates as part of substantive discovery, to include depositions of the parties, experts and third persons.

On March 28, 2016, the Court entered its' Order [Dkt 182] granting in part and denying in part the Motion to Dismiss filed by Defendant's Clyde R. Robertson and Kenneth W. Hill, Jr..

On April 27, 2016 Plaintiffs filed their Motion for Reconsideration and memorandum brief in support in response to this Honorable Court's Order on Motion to Dismiss for Failure to State a Claim on two of Plaintiffs' counts [Dkt 204, 205].

On May 10, 2016, Defendants filed their Response in Opposition to Plaintiffs' Motion for Reconsideration [Dkt 210].

In light of the Court's Order [Dkt 182] another status conference was set with Magistrate Judge Alexander for May 3, 2016 [Dkt 206]. At the status conference, the parties agreed to mediate the case. The parties agreed not to conduct any further discovery until the mediation.

On May 20, 2016, Defendant Kenneth W. Hill filed his Motion for Summary Judgment and supporting memorandum brief [Dkt. 222, 223]. On June 10, 2016 and June 14, 2016, Defendants Kenneth Hill Sr., and Clyde R. Robertson filed their Motions for Joinder in Defendant Kenneth W. Hill's Motion for Summary Judgment [Dkt. 225,226, 228, 229]. On June 17, 2-16, Defendant Clyde Robertson filed his Motion for Summary Judgment [Dkt 230].

On June 30, 2016 and July 13, 2016, Plaintiffs filed their Responses in opposition to all of the Motions for Summary Judgment that were filed [Dkt. 235-242, 245-246]. On Monday, August 8, 2016, the Parties mediated this matter before the Honorable William Larry Latham of Mediation Arbitration Professional Systems, Inc. The Parties finalized an agreement, which culminated in the Memorandum of Settlement Agreement, which is attached as **Exhibit 1** to the *Unopposed Motion for Final Approval of Class Action Settlement and Certification of the Settlement Class*. On August 12, 2016 Plaintiffs filed their Motion for Certification For Interlocutory Appeal and a memorandum in support thereof [Dkt. 250-251]. On January 18, 2017, the Parties attended a scheduling conference, and conferred with one another regarding the resolution of said matter. On March 23, 2017, the Parties executed a Settlement Agreement, which is attached as **Exhibit 2** to the *Unopposed Motion for Final Approval of Class Action Settlement and Certification of the Settlement Class*.

On May 3, 2017, the Parties attended a hearing for preliminary approval of the proposed settlement and class certification. On May 9, 2017, the Court preliminarily approved the proposed settlement and approved class certification [Dkt. 269].

Since the Order of the Court on May 9, 2017 [Dkt. 269], proper notice has been sent to all class members with additional mailings to members whose mail was returned. No objections have been filed by any class member from the time Notice commenced to the date of this filing, and only one individual class member has chosen to opt out. On July 26, 2017, counsel for the Class, Diandra S. Debrosse Zimmermann, filed an affidavit detailing Class counsel's efforts in locating and notifying all class members [Dkt. 274], in Exhibit 3.

### III.   THE SETTLEMENT AND NOTICE

#### A.   The Class

The term "Class" is defined in the Settlement, as follows:

All participants, beneficiaries, and alternate payees of the ESOP reflected on the records of the ESOP as of August 15, 2013.

There are 750 individuals who are members of the Class.

### B.     Final Approval of the Settlement Agreement and the Class Fund

The Parties agree to settle the claims asserted for Eight Hundred and Fifty Thousand Dollars ($850,000.00). The proposed Settlement is inclusive of all claims, payment of notice costs, attorneys' fees, costs and expenses, Named Plaintiff incentive awards, and all other items of liability. This is a full-distribution non-reversionary settlement to be paid into the Plan after the payment of notice costs, attorneys' fees, costs and expenses. No sums will revert to Defendants, and no Defendants will benefit from this settlement.

### C.  The Class Notice

Counsel for the Class, Diandra Debrosse, previously submitted an affidavit [Dkt. 274] to the Court detailing Class counsel's efforts to notify all class members by July 26, 2017, and this affidavit is incorporated by reference as if fully set forth herein.

### D.  Distribution

Settlement Class Members shall immediately benefit from the settlement of said matter, as the remaining portion of the Fund, after attorneys' fees, costs, expenses, and notice costs shall be paid directly into the Plan.  The share of the Fund, after attorneys' fees, costs, and expenses, to which a Class Member is entitled will be based upon the terms of the Plan.

### E.  Opt Outs

Settlement Class members have been given the right to opt out of the Settlement Class or to object to the terms of the Settlement. As of July 26, 2017, only one class member has elected to opt out [Dkt. 274].

### F.  Objectors

Members of the Class were given the right to opt out of the Settlement or to object to its terms.  As of July 26, 2017, no class member has objected to the proposed settlement [Dkt. 274].

## IV.  ARGUMENT

The Manual for Complex Litigation (Fourth) (2004) §21.63 describes a three-step procedure for approval of class action settlements:

> 1)      Preliminary approval of the proposed settlement at an informal hearing (which has occurred as set forth above);

> 2)      Dissemination of mailed and/or published notice of the settlement to all affected class members (which is set forth in Exhibit 3); and

> 3)      A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

### A.      Final Approval of the Settlement is Warranted

#### 1.      The Proposed Class Settlement Is Fair, Adequate, and Reasonable.

A class action may not be dismissed, compromised or settled on behalf of a certified class without the approval of the Court. Fed. R. Civ. P. 23(e). As described in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") §21.63, *et seq*., Rule 23 prescribes defined procedures and criteria for settlement approval in class action settlements, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *See* Manual at §§ 21.632, 21.633, and 21.634.

A class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d

1326 (5th Cir. 1977); *Jones v. Singing River Health Servs. Found.*, No. 16-60550, 2017 U.S. App. LEXIS 13631, at \*14 (5th Cir. July 27, 2017).

In determining whether the class action settlement is fair, reasonable, and adequate, the Fifth Circuit Court of Appeals held that the district court must consider the following six factors:

> (1) existence of fraud or collusion behind the settlement; (2) the complexity, expense and duration of litigation; (3) the stage of proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) (referred to herein as the "*Reed* factors"); *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).

An analysis of the *Reed* factors establishes that this settlement is fair, reasonable, and adequate. The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Ayers,* 358 F.3d at 369; *Liger v. New Orleans Hornets NBA L.P.*, No. 05-1969, 2009 U.S. Dist. LEXIS 85733, at \*10 (E.D. La. Aug. 27, 2009); 4 NEWBERG ON CLASS ACTIONS § 11.51 (4th ed.). There are no allegations involving fraud or collusion in the settlement of this action.

In addition, the facts belie any inference of fraud or collusion in the settlement of this matter. The Parties have vigorously prosecuted this action, and settled after two negotiation and mediation efforts. The Parties mediated the matter with the Honorable William Larry Latham, an experienced trial attorney and well-respected mediator. In addition, during the mediation, more than ten (10) representatives of the Class were present, and were involved in every aspect of the settlement negotiations.

The time and effort spent on negotiation, in consulting with the Class Representatives, and in working with the mediator indicates strongly that the negotiation was reached without collusion, but rather voluntarily in light of the relative risks to and interests of all Parties. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Ayers v. Thompson*, 358 F.3d at 369. An analysis of the complexity, expenses and duration of this litigation indicate strongly that this settlement is fair, reasonable, and adequate.

This is an ERISA class matter, and is generally considered to be complex. Currently, Plaintiffs have reserved their rights on appeal with regard to Counts I and II of Plaintiffs' Third Amended Complaint which were dismissed in this matter, and are prepared to move forward with complex arguments regarding ERISA liability before the Fifth Circuit Court of Appeals. In addition, the remaining claim involving usurpation of corporate opportunity involves a detailed and complex assessment of various business and individual ties, and two external companies to this litigation. Class representatives have dedicated dozens of hours dedicated to this litigation. Similarly, a review of the docket reveals, we are sure, but a fraction of the time the defendants and Defense Counsel have dedicated to this litigation. Finally, Class Counsel has collectively expended more than 1,500 hours in litigating this matter, and more than $30,000 in costs. Continued litigation threatens to impose high costs of time and additional funds on all of the parties, while impacting the Class whose members already have been disadvantaged by the events surrounding the Plan that are the subject of this lawsuit.

Significant discovery has been conducted in this matter, both informally and formally, and the Parties have exchanged four rounds of proffers. Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to

evaluate the merits of the competing positions." *Ayers*, *supra.*, 358 F.3d at 369. All of the parties agree that considering the dismissal of Plaintiffs' first two counts, as well as discovery related to the remaining counts, that Class Counsel is more than able to determine the settlement's adequacy in relation to the probability of success on the merits were this litigation to continue.

The probability of success on the merits is the most important *Reed* factor. "In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *Smith v. Crystian*, 91 F. App'x 952, 954 n.3 (5th Cir. 2004). First, Plaintiffs run the risk of not succeeding at trial as Plaintiffs will have to establish a usurpation of corporate opportunity by Defendants, by and through their relationships with Xcavators, Inc. Establishing this claim will require an in depth analysis of financial entanglements between the parties – to the extent they exist. Due to the inability to fully conduct discovery, Plaintiffs run the risk of moving forward and being unable to establish said usurpation, resulting in a loss upon a motion for summary judgment. In light of this significant risk, the probability of success on the merits, or the lack thereof, strongly favor class-wide settlement.

The *Reed* "range of possible recovery factor" requires the district court to "establish the range of possible damages that could be recovered at trial and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983). A review of equipment variance discussed in Plaintiffs' Memorandum Brief in Opposition to Defendant Kenneth Hill Jr's Motion for Summary Judgment [Dkt. 238], pg. 9, reveals, upon limited discovery, damages in the range of $145,000 to $200,000. Without further expensive discovery and expert analysis, it is difficult to determine the possible range of

damages. Yet, as discussed above, the ability to even reach possible recovery is problematic at this stage.[5]

Finally, the opinions of class counsel, class representatives and absent class members must be considered in the analysis of whether this proposed settlement is fair, reasonable and adequate. The endorsement of class counsel is entitled to deference. In performing this balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Plaintiff is represented by counsel experienced in complex class action litigation, complex litigation, and in class actions relating to ERISA specifically, as set forth in undersigned counsels' declarations in Exhibits 6, 7, 8, 9, and 10 to Plaintiffs' Motion to Certify Class and for Preliminary Approval of Class Action Settlement [Dkt. 265], and said declarations are incorporated herein by reference as if fully set forth herein.

Plaintiffs note also that based on the posture of the litigation, and the risk involved Class Counsel are confident that this Settlement, while not the most desirable settlement, is fair, adequate and reasonable. All of the Named Plaintiffs representing the Class are also in favor of approval of the Settlement. As discussed herein, the *Reed* factors strongly favor final approval of this Class Action Settlement.

### 2. The Court Should Appoint Named Plaintiffs as the Class Representatives and Undersigned Counsel as Class Counsel.

Counsel will and has fairly and adequately represented the Class as required by Rule 23(a)(4). Class counsel is qualified to pursue the interests of the Class vigorously. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). Class counsel have prosecuted this claim vigorously, and has engaged in substantial discovery and motion practice, and have expended thousands of

hours in prosecuting this claim. In addition, Plaintiffs' counsel is familiar with and has experience in litigating similar complex claims.

Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained able counsel with extensive experience in class action litigation, and have been active and vigilant in the prosecution of these claims. The interests of Plaintiffs are coincident with and not antagonistic to the interests of the other Class members.

Class Counsel for Plaintiffs have previously submitted their declarations in support of Plaintiffs' Motion to Certify Class and for Preliminary Approval of Class Action Settlement [Dkt. 265], and said declarations are incorporated herein by reference as if fully set forth.

As such, Plaintiffs respectfully requests that this Honorable Court appoint all firms as Class Counsel, and that this Honorable Court appoint all named plaintiffs as Class Representatives.

### B. <u>Final Certification of the Settlement Class is Appropriate</u>

Plaintiffs respectfully request that the Court finally certify the Settlement Class as defined hereinabove. Defendants waive their right to challenge class certification solely for purposes of this Settlement. For the reasons set forth below, final class certification is appropriate under Fed.R.C.P. 23.

In order to certify a class action, the named Plaintiffs must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3). *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

### 1. <u>The Class is Ascertainable</u>

"Ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015). The Defendants and the Plan have provided the names of the 750 class members. As such, the ascertainability requirement is met in this case.

### 2. Rule 23(a) Requirements are Satisfied

Fed. R. Civ. P. Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed.R.Civ.P. 23(a).

Rule 23(a) provides that the Plaintiffs must show that "the class is so numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). While, the number of members in a proposed class is not determinative of whether joinder is impracticable, *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981), the size of a class of 100 members generally satisfies the numerosity requirement. *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999), *citing* 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable"); *cf. Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members). The class numbers 750, and as such the numerosity requirement is met.

Under Rule 23(a), Plaintiffs must demonstrate that "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). Both typicality and commonality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

14

interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

Commonality requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'" *Walmart Stores, Inc. v. Dukes*, 131 S.Ct 2541, 2551 (2011) (quoting *Falcon, supra.*, 457 U.S. at 156). There should be some "common contention" of that shared injury that is applicable to the Claims of all Class Members. See *Id*. "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Under the Supreme Court's decision in *Wal-Mart*, Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" "[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant…" *Wal-Mart*, 131 S. Ct. at 2551. "Thus, the commonality test is no longer met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Id*. (emphasis, citation, and internal quotation marks omitted). "Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Id*. (alteration, emphasis, citation, and internal quotation marks omitted.)

In the instant action, the legal and factual questions which are and shall be advanced by Plaintiffs and Defendants, and which are integral to resolving issues which are central to each and every one of the class member's claims in one stroke, to-wit: (a) whether Defendants usurped corporate opportunities belonging to HBCC; (b) whether Plaintiffs' ESOP was caused to collapse due to said usurpation; and (c) whether the class members, as a result of the same conduct by the same Defendants, are entitled to relief.

Directly in line with the United States Supreme Court's opinion in *Wal-Mart*, all of the claims in this matter contain a common contention and a common allegation of wrongful conduct – all imposed upon class members by the same defendants. All of the central and key legal and factual determinations which must be determined and adjudicated are common to all members of the class.

Typicality is not a difficult standard to meet and is satisfied if the representatives' claims share essential characteristics with the class members' claims or if the claims arise from a similar course of conduct and share the same legal theories. *James v. City of Dall.*, 254 F.3d 551 (5th Cir. 2001).

Plaintiffs have alleged an injury typical of the injuries of putative class members – specifically that Defendants usurped the corporate opportunities of HBCC resulting in a devaluation of HBCC and the ESOP, resulting in substantial economic harm to Plaintiffs and to the rest of the class. No other issue predominates this action. As such, Plaintiffs claim is typical of the claims of the members of the class.

In sum, the named Plaintiffs meets the typicality requirement as indicated in detail *infra*, and there are no unique defenses which could be logically and/or reasonably asserted separately against any of the named Plaintiffs in this matter.

16

Finally, the proposed representatives will fairly and adequately represent the class as required by Rule 23(a)(4). In order to satisfy this requirement, Plaintiffs must show that (1) the class representatives share common interests with the class members; and (2) Plaintiffs' counsel is qualified to vigorously pursue the interests of the class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997); *Steering Comm. v. BP Expl. & Prod. (In re Deepwater Horizon)*, 785 F.3d 1003 (5th Cir. 2015).

All of the class representatives share common interests with the class members. They are all former participants in the Plan who lost all of their investment, and who have never served in a fiduciary capacity within the Plan. They do not have any adverse interests to those of the class members at large, and seek to recover but a fraction of what they assert the class should have received, but for the wrongful acts alleged. The interests of Plaintiffs are coincident with and not antagonistic to the interests of the other Class members.

As noted above, Plaintiffs' counsel are familiar with and have experience in litigating similar claims. Plaintiffs will fairly and adequately represent and protect the interests of the Class as Plaintiffs have retained able counsel with extensive experience in class action litigation.

As such, Plaintiffs do and shall satisfy the fair and adequate representation requirement of Fed.R.Civ.P. 23.

### 3. <u>Rule 23(b)(3) Requirements are Satisfied</u>

Rule 23(b)(3) imposes two prerequisites, predominance and superiority: "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and . . . a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615; *Unger v. Amedisys Inc*., 401 F.3d 316, 320 (5th Cir. 2005); A*pplewhite v.*

17

*Reichhold Chems., Inc.*, 67 F.3d 571, 573 (5th Cir. 1995). Rule 23(b)(3) also includes a non-exhaustive list of factors pertinent to findings of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

"Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case." *Steering Committee v. Exxon Mobil Corp*., 461 F.3d 598, 601 (5th Cir. 2006). "This requirement, although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re : Katrina Canal Breaches Consol. Litig.*, 258 F.R.D. 128, 132 (E.D. La. 2009)*; citing Unger v. Amedisys Inc*., 401 F.3d 316, 320 (5th Cir. 2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 2249-50, 138 L.Ed.2d 689 (1997)).

With regard to the factors as set forth in Fed. R. Civ. P. 23(b)(3), the class members do not have a strong individual interest in prosecuting separate actions. Due to the nature of their significant loss, the class members would face significant challenges in seeking damages through various individual actions. Prior to the filing of this Complaint, none of the class members had filed any action against the Defendants. Considering that the Defendants were and are Mississippi residents, and the bulk of those effected were or are Mississippi residents, the desirability of maintaining the litigation in Mississippi is apparent. Finally, considering the nexus of the parties to Mississippi, and the determination that the Plan will issue payment, there are no true difficulties in managing this matter as a class action.

Furthermore, common questions of law or fact applicable to the class, as a whole, predominate over any issues that would require individualized proof, to-wit: (a) whether Defendants usurped corporate opportunities belonging to HBCC; (b) whether Plaintiffs' ESOP was caused to collapse due to said usurpation; and (c) whether the class members, as a result of the same conduct by the same Defendants, are entitled to relief. Individualized issues do not exist with regard to causation and affirmative defenses in this matter. Similarly, Defendants would assert the same affirmative defenses to any plaintiff pursuing similar claims as those as set forth in Plaintiffs' Third Amended Complaint.

The Court must also consider how the case would actually be tried as a class action to determine whether manageability problems prevent class litigation from being the superior mode of adjudication. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743-45 (5th Cir. 1996).

A trial in this matter would not require the determination of liability with regard to each individual plaintiff, but would require a determination as to: (a) whether Defendants usurped corporate opportunities belonging to HBCC; (b) whether Plaintiffs' ESOP was caused to collapse due to said usurpation; and (c) whether the class members, as a result of the same conduct by the same Defendants, are entitled to relief. Similarly, the Defendants would advance the same affirmative defenses as to all Plaintiffs.

Based upon the foregoing, certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(3).

### V.  CONCLUSION

For the reasons set forth above, Named Plaintiffs Robert K. Hill, Donald Byther, Sandy Byther, Keith Clark, Samuel Copeland, B.T. Erve, Percy Evans, George Flakes, Scott Goolsby,

Sheila, Kelly, Paul Leonard, Fred Smith, Dewayne Tolliver, Ulysses Wiley, and Warfloyd Winters respectfully request that this Honorable Court:

1. Grant Final Approval of the proposed Settlement; and

2. Certify the Settlement Class.

**RESPECTFULLY SUBMITTED**, this the 7th day of August, 2017.

/s/ L.N. Chandler Rogers
MS State Bar No. 102543

/s/ Matthew Y. Harris
MS STATE BAR NO. 99595

/s/ Diandra S. Debrosse Zimmermann
AL State Bar No. ASB-2956-N76D
*Admitted Pro Hac Vice*

/s/Edgar C. Gentle, III
AL State Bar No. ASB-0349-E68E
*Admitted Pro Hac Vice*

/s/ Sterling L. Deramus
AL State Bar No. ASB-6781-R60S
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**OF COUNSEL**:

**THE LAW OFFICES OF MATTHEW Y. HARRIS, PLLC**
218 South Denton Road, Suite A
New Albany, Mississippi 38652
T: (662) 539-7381
F: (662) 539-7012
E: mharris@myharrislaw.com

**ROGERS LAW GROUP, P.A.**
201 East Bankhead St.
New Albany, Mississippi 38652
T: (662) 538-5990
F: (662) 538-5997
E: chandler@rogerslawgroup.com

**ZARZAUR MUJUMDAR &
DEBROSSE – Trial Lawyers**

2332 2nd Avenue North
Birmingham, Alabama 35203
T: (205) 983-7985
F: (888) 505-0523
E: fuli@zarzaur.com


**GENTLE, TURNER, SEXTON, AND HARBISON, LLC**

Suite 100-501 Riverchase Parkway East
Hoover, Alabama 35244
T: (205) 716-3000
F: (205) 716-3010
E: escrowagen@aol.com


**STERLING L. DeRAMUS**

300 Vestavia Parkway, Suite 2300
Birmingham, Alabama 35216
T: (205) 504-0189
F: (205) 449-7392
E: sderamus@deramuslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2017, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to all counsel of record:

Diandra S. Debrosse Zimmerman, Esq.
fuli@zarzaur.com

Matthew Y. Harris, Esq.
mharris@myharrislaw.com

Edgar C. Gentle, III, Esq.
escrowagen@aol.com

Sterling L. Deramus, Esq.
sderamus@deramuslaw.com

John S. Hill, Esq.
jhill@mitchellmcnutt.com

Stuart S. Davis, Esq.
sdavis@rayburnlaw.com

Lawrence J. Tucker, Jr., Esq.
lawrencetucker@hickmanlaw.com

William B. Raiford, III, Esq.
will@chapman-lewis-swan.com

Scot Spragins, Esq.
SSpragins@hickmanlaw.com

John Booth Farese, Esq.
jbooth@fareselaw.com

Ralph Chapman, Esq.
ralph@chapman-lewis-swan.com

Guy Mitchell, Esq.
gmitchell@mitchellmcnutt.com

Kenneth H. Coghlan, Esq.
kcoghlan@rayburnlaw.com

**SO CERTIFIED**, this the 7th day of August, 2017.

<u>/s/ L.N. Chandler Rogers</u>

22